Case No. 23-1795, et al., Eugene Hudson, Jr. v. American Federation of Government Employees, Affiliates. He spoke in silence for the Affiliates, Ms. Morton for the Affiliates. Good morning, counsel. Ms. Oppenheimer, please proceed when you're ready. Good morning, Your Honors, and may it please the Court. I'm Elizabeth Oppenheimer for the American Federation of Government Employees, and I'd like to reserve three minutes for rebuttal in response to the cross-appeal. The starting point in this case is that Plaintiff Hudson's counsel, Ms. Kemi Morton, did not submit evidence during the fee litigation that would allow for a reliable and non-arbitrary determination of the fee under the Lodestar Method. With respect to ours, Ms. Morton submitted a spreadsheet that she said was a contemporaneous record of the time she had worked. But the district court delved deep into the spreadsheet and made an express finding that it was not a contemporaneous record of her hours. Because Ms. Morton did not ever admit or acknowledge that it was not a contemporaneous record, the record in this case contains no evidence whatsoever as to where the numbers on that spreadsheet came from. We can guess, as a matter of common sense, that it may be a reconstruction based on the docket, but the record in this case is totally devoid of evidence from which a district court could determine where those numbers came from, whether they are reliable, and therefore, what a reasonable number of hours worked is. With respect to the rate, Ms. Morton asked for just short of $1,000 per hour, based only on the year of her graduation from law school and references to having worked two jobs. But in neither case did she say when or for how long she had worked them. ASG argued to the district court, as it argues to this Court, that in these circumstances, doing a lodestar calculation and then just reducing it by some degree was inadequate because it was impermissibly arbitrary under the Supreme Court and this circuit's case law. And this was particularly so because Ms. Morton had committed misconduct in connection with the fee litigation itself, including claiming that the hours were contemporaneous and also submitting what the district court called an exceedingly high fee demand that the district court found was an impermissible attempt to force AFG to negotiate. Wouldn't it have been arbitrary for the district court to just say, well, you got a jury award of $100,000, so I'm going to give you attorney's fees of $100,000? Why wouldn't that have been arbitrary? Because there is some tie between the award and some objectively findable fact, which is what the jury determined the value of this litigation is. I would admit it's not a perfect solution, but the problem here is that the lodestar method just doesn't work. We don't have inputs. It is essentially an impermissibly arbitrary in violation of Purdue. So there needs to be something else, and we scoured the circuit's case law for some ideas as to what that something else might be. So suppose you had a case where the lawyer kept and the judge found and there was basically no reason to disturb a finding that the lawyer kept meticulous contemporaneous records and that the hourly rate was in line with the hourly rate that they charge in dozens of cases, and it came out that based on all of that, there was $300,000 that was expended on, but the verdict was $100,000. You're saying it would have been arbitrary and capricious for the judge in that case to award anything over the $100,000 verdict? No, because in that case, the judge would have the information necessary to use the lodestar method, which certainly is the preferred method for determining fees when there is an adequate basis to use it. But here there isn't. As far as the record reveals, the number for hours was made up out of whole cloth. And that being the case, there's no way — I mean, the district court here was making very precise adjustments to hours, but the starting number — That the district court's finding about the hours was clearly erroneous. To conclude that, wouldn't we? Well, I think of the district court's findings as being the findings on particular factual issues, such as was the spreadsheet kept contemporaneously. The number of hours is not really a finding of fact. It's his conclusion about what one of the inputs to the lodestar calculation would be. But he didn't — he was not finding that she had worked X number of hours. He was finding that that was — legally more than factually, that that was an appropriate number to put into the calculation. Is that right? I mean, the Supreme Court has consistently held that fee awards are particularly suited to the exercise of the district court's discretion, and that is because they are deeply factual. Uh-huh. And although I understand the basis of your characterization wasn't a crisp and precise finding, but it seems very factual that the district judge who provided over this prolonged and challenging litigation made — you know, explained why he rejected the hourly rate chosen, explained why he used as a starting point the alternative rate that I think some documents that, you know, your side had put in was at least a starting point, and then made — you know, in light of various other facts, made some substantial reductions. And yes, there's a character of sort of approximation, but as the Supreme Court has also said, fee awards are necessarily somewhat approximate, and it just seems like it's a real uphill battle to argue for the kind of rule, even for a subset of cases, that you're arguing for. I absolutely appreciate that in fee litigation, this kind of argument is an uphill battle, but the facts here really are about as extreme as they get in two ways. One is there is literally nothing in the record supporting the hours number, nothing. And two — Well, there were briefs filed, and there were appearances in court. Sure, there was work done. So, at that level, there is something. But the district court didn't say, I observed the course of this litigation, and it strikes me it took about 1,000 hours. He took her number, which had no evidentiary justification, and made adjustments to it. Well, she compiled a list of activities that had some relationship to dates in the case, and he looked at that with a skeptical eye. But, you know, contrary to your wishes, he didn't just, you know, wipe the chalkboard clean. It does not seem that it should be the rule in this circuit that somebody who submits hours and is not honest with the court about where that list came from should nonetheless get a substantial fee award that is paid from union member's districts. And understanding that I'm facing some skepticism here, I'll just say to finish up that the award here is not tied to the evidence. That's not permissible under the Supreme Court's case law, and the district — this court should give the district court's guidance as to what to do under these sorts of extreme facts. Thank you. Thank you, counsel. Morton. Good morning, Your Honors. May it please the Court. I'm Kemi Morton. I'm representing the plaintiff, Eugene Hudson, in this matter in his opposition to the appeal, as well as in his cross-appeal. I was before this court two years ago when we defended the jury verdict when it was appealed. And we're here today because we oppose AFGE's argument that there were no contemporaneous timesheets kept. They do appear in the joint appendix, starting at A281. Our position has always been that they were contemporaneously kept. What confuses this case is that there were two fee petitions. The first one was — the court ordered plaintiff's counsel, myself, to file the first one in July of 2021. And the union asked the court to defer ruling on that fee petition, which was contemporaneously created, until it could appeal to this court. And the district court agreed. So then after this court issued its mandate and it went back to the district court, I was asked to submit a revised fee petition. And that is the fee petition that the court reviewed in its discretion. It reduced some of the hours. It found that the hours — clearly it found — it approved 847.6 hours. That indicates that the court had scrutinized the timesheets that I submitted, the affidavits that I submitted, and found them to be reasonable. And unless this court finds that that was clear abuse of discretion or a clearly erroneous decision, there is a basis for the court's finding on that point, that the fees were reasonable. The only problem we have that we would like to address in arguing on our appeal is the hourly rate that was chosen under the Lafayette matrix. Because after July 2021, in October 2021, Judge Pan, who at that time, Florence Pan, was on the D.C. Superior Court, had also ruled on a fee petition that I filed in that case. It was a related case. AFGE was the defendant. And Judge Pan found that, based on my experience and my billing records, that the Lafayette matrix fee of $914 an hour was presumptively reasonable. We have that order in the record. Yes. But the underlying evidence in support of that, was that before the district court? And is that in our record? We did. I did bring that up to the court. Yes, I did, Your Honor. I informed Judge Boisberg about Judge Pan's ruling. I know you informed him about it, but you said that that hourly rate was supported by documentation. Yes. Was that documentation that supported that hourly rate presented to the district court? If I were to go and look on the district court docket, would I find it? I presented it to the Superior Court. I did not. I don't think I presented it to the district court, Your Honor. But I also advised the district court that I had represented another client in New York at the rate of $950 an hour, and that we had settled that racial discrimination case and offered to produce my documentation and timesheets, but the court declined to receive those. That's also in the record. I told the court that I had represented Sammy McDonald in the U.S. District Court for the Middle District of Florida in his racial discrimination case in 2009. That is also in the record, and that that case settled the day before trial, and I was awarded through settlement, of course, fees based at the highest Lafayette matrix rate. I didn't include the timesheets for the New York case or the Middle District of Florida case in the district court case, but I did inform the court about that. And I also explained to the court that since 1979, I've worked for Enfoldment Law Offices, which is a nonprofit organization that represents clients who have low and moderate income, and that sometimes, you know, we don't charge them anything. Sometimes we charge them what they can afford. As far as the $450 hourly rate that the district court landed on, I just feel that's, right now, if you look at the Lafayette matrix index, that's the rate for a lawyer with one to three years of legal experience, Your Honors. And I've been practicing law since 1979. I graduated from law school in 1978. And in 45 years, I've practiced law in the District of Columbia. Most of my cases, discrimination cases, have settled. I have cases right now that I'm working on. They're likely going to settle. Very few cases actually go to trial. And in this case, this was a landmark case because this was the only case in AFGE's nearly 100-year history where a jury found that they had discriminated against a national elected officer. So it set a precedent, and it created a seismic change at AFGE in how national officers are removed from office. They pass what's called the Hudson Amendments at the delegation, the delegates to the convention did. And so in that respect, I think it had a sizable effect in changing the atmosphere at AFGE. Even though he only got $100,000, you've got to recall, he wasn't removed from office. He was only demoted and certain authorities were taken away from him. And that's why the jury's award was only $100,000, because he still had his job. And I think that should be taken into consideration. Finally, one final point. The jury passed a note. They said something to the effect, if we fine for the plaintiff, how much damages should we award? And this was the time of COVID. It had been a six-day trial. And two hours after they had deliberated, they came back with that note. And the court said, well, that's up to you to decide. And so they walked out into the hall. I don't think they were in the hall for 10 minutes. And they came back and they said $100,000. So we weren't really given an opportunity to argue damages. I had asked for a separate damages hearing. We weren't. That was denied. So I think that should be taken into consideration, too. And proportionality, I think, is very unfair to base legal fees on proportionality. I think there are a lot of cases that I've cited in my brief that would hold to the contrary on proportionality. Thank you, counsel. Ms. Oppenheimer, we'll give you two minutes for rebuttal. Yes, Your Honors. Briefly, I wanted to respond to Judge Wilkins' question about whether there was any documentation of the $950-an-hour rate. There was not any documentation of that rate in the Superior Court litigation. And there was none in this litigation. In her first affidavit here, Ms. Morton claimed that she charged $950 an hour. But when AFG challenged that, she did not make that assertion again in her second affidavit. So in all of the litigation of which I am aware, there is no documentation of that rate or really any other rate. Two final quick points. One is AFG was not allowed to take discovery about the rate or the hours, which makes it particularly problematic that they were so poorly supported and were nonetheless the basis for the district court's decision. And finally, I would say as to the rate issue, Ms. Morton did not address here and has not meaningfully addressed elsewhere the fact that the numerous sanctions awarded by different courts do go into the reputation question that is part of the determination of rates. And the district court's decision on that issue was eminently sound. Are there any other questions? I think so. Thank you, counsel. Thank you both, counsel. We'll take this case under submission.
judges: Srinivasan; Pillard; Wilkins